**In the Matter of Andrew MacLean STOLL, Debtor.**

**Andrew MacLean STOLL, Plaintiff,**

**v.**

**INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. A89–08395–WHD.
Adv. No. 89–0605A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 19, 1990.

Alan I. Seitman, Marietta, for debtor.

Michael N. Wilcove, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for I.R.S.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

The present adversary proceeding was initiated by Andrew MacLean Stoll (hereinafter referred to as "Debtor") on November 2, 1989 to determine the dischargeability of his tax debts for the years 1979 through 1985 totalling $48,887.59. Pursuant to a consent order filed on July 19, 1990, the Internal Revenue Service (hereinafter referred to as the "IRS") and Debtor have agreed to resolve the matter by filing cross-motions for summary judgment. Debtor filed his motion on June 29, 1990, and the IRS's motion followed on July 30, 1990.

Along with the consent order the parties filed a stipulation of the following facts: Debtor filed federal income tax returns for the years 1981, 1982, 1983, and 1984 on June 20, 1986, and he filed a return for 1985 on July 2, 1986. The IRS assessed Debtor's income tax liabilities for 1981 and 1982 on September 15, 1986, assessed his 1983 and 1984 tax liabilities on August 4, 1986, and assessed his 1985 tax liabilities on August 25, 1986.

On October 27, 1987, Debtor filed a Chapter 13 petition in this Court, scheduling his tax debts for the years 1979, 1980, 1981, 1982, 1983, 1984, and 1985. He filed a repayment plan on November 12, 1987, proposing to pay the 1984 and 1985 tax debts as priority claims and characterizing the other tax debts as general unsecured claims. The plan was confirmed on February 16, 1988, but the Chapter 13 case was dismissed on June 20, 1989. Debtor filed his present Chapter 7 petition on August 2, 1989. Both parties agree that Debtor's 1979 and 1980 tax debts are dischargeable in this proceeding.

Initially, the Court agrees that this matter can be resolved at the summary judgment stage. According to Bankruptcy Rule 7056, which incorporates Federal Rule

of Civil Procedure 56, a motion for summary judgment shall be granted when there is no material issue of fact to be tried and the movant is entitled to judgment as a matter of law, *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *on remand,* 826 F.2d 33 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). In this case the necessary and relevant facts have already been stipulated to by the parties, and the question of whether the 1981–1985 tax debts and penalties can be discharged now depends on this Court's interpretation of the Bankruptcy Code and of the relevant case law.

## I.

█ First the Court must look at § 523(a)(1)(A), which excepts from discharge any tax debt "of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title," 11 U.S.C. § 523(a)(1)(A) (1990). Section 507(a)(7)(A)(i) gives priority status to income tax claims "for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition," 11 U.S.C. § 507(a)(7)(A)(i) (1990). The combined effect of these provisions is to render a tax debt nondischargeable if the last date in which a return could have been filed was within three years of the petition filing date, *In re Molina,* 99 B.R. 792, 794 (S.D.Ohio 1988); *In re Brickley,* 70 B.R. 113, 114 (9th Cir. BAP 1986). In this case, Debtor's tax returns for the years 1981 through 1985 were past due by August 2, 1986, three years before the present proceeding was initiated, and a simple reading of the above statutes would indicate, as Debtor urges, that the tax debts for these years do not fall within the statutory exception to discharge.

Debtor's earlier Chapter 13 filing complicates the issue, however, because the automatic stay in that proceeding prevented the IRS from taking any actions to collect the tax debt for approximately 20 months. For that reason, argues the IRS, the three year limitations period was suspended during the course of that proceeding, and as a result the 1984 and 1985 tax liabilities are excepted from discharge.[1] Statutory support for this position is found in § 108(c) of the Code, which provides in pertinent part that

> if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay ... with respect to such claim.

11 U.S.C. § 108(c) (1990). Further support is found in § 6503 of the Tax Code, which includes the following provisions:

> (b) The period of limitations on collection after assessment prescribed in section 6502[2] shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States ... and for six months thereafter ...
>
> (i) The running of the period of limitations provided in section 6501[3] or 6502 on the making of assessments or collections shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from mak-

---

1. 925 days elapsed from April 15, 1985 to October 27, 1987, and 43 days elapsed from June 30, 1988 through August 2, 1989, totalling 968 days. Using this logic, the three year (1095 day) limitation period did not expire.

2. Section 6502 of the Tax Code sets a six year statute of limitations for collecting taxes. 26 U.S.C. § 6502 (1989).

3. Section 6501 of the Tax Code sets a three year statute of limitations for assessing taxes. 26 U.S.C. § 6501 (1989).

ing the assessment or from collecting and—

   (1) for assessment, 60 days thereafter, and

   (2) for collection, 6 months thereafter.

26 U.S.C. §§ 6503(b), (i) (1990). The legislative history of § 108(c) evidences an intended interrelationship between these statutes:

> In the case of Federal tax liabilities, the Internal Revenue Code suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for 6 months thereafter (sec. 6503(b) of the Code). The Amendment applies this rule in a title 11 proceeding. Accordingly, the statute of limitations on collection of nondischargeable Federal tax liability of a debtor will resume running after 6 months following the end of the period during which the debtor's assets are in control or custody of the bankruptcy court. This rule will provide the Internal Revenue Service adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.

S.Rep. No. 989, 95th Cong., 2nd Sess. 30–31 (1978), 1978 U.S.Code Cong. & Admin.News 5787, 5816–17.

■ After analyzing § 108 and its legislative history, most of the courts recently addressing this issue have ruled that, for the purposes of determining the dischargeability of income tax liability, the three year period in § 507(a)(7)(A)(i) is suspended during the course of an earlier bankruptcy proceeding, *see Molina*, 99 B.R. at 792; *Brickley*, 70 B.R. at 113; *In re Quinlan*, 107 B.R. 300 (Bankr.D.Colo.1989). Debtor adopts the reasoning of *In re Deitz*, 106 B.R. 236 (Bankr.D.Colo.1989), *rev'd*, 116 B.R. 792 (D.Colo.1990), however, which disagrees with the conclusion of these cases. First, according to *Deitz*, the three year period in § 507(a)(7)(A)(i) is not a collections period or a statute of limitations but a period of time which measures the tax years for which a priority will be given in a bankruptcy proceeding, *Id.* at 239. Second, the Bankruptcy Court in *Deitz* explained that while § 108(c) may be used to extend nonbankruptcy law limitation periods, such as the six-year tax collection limit in § 6502, on its face the statute is not applicable to bankruptcy law limitations such as the one found in § 507(a)(7)(A)(i), *Id.*

The rationale in *Deitz* is not persuasive. First, it is analytically shortsighted to assume that the three year period of § 507(a)(7)(A)(i) has no other purpose than to measure a time period for which a priority will be given, and that it was mechanically incorporated into the dischargeability provisions of § 523 without reason. The IRS' priority can be explained by a Congressional desire to protect tax revenues and to prevent taxpayers from evading their tax debts in bankruptcy proceedings, but the time limit on this priority manifests Congress' countervailing policy of preserving debtors' right to a "fresh start" even with respect to their tax debts. This Court concurs with *Brickley* that these provisions set a time frame in which the IRS can reasonably be expected to collect tax debts, *Brickley*, 70 B.R. at 115, after which the IRS will not be protected from discharge in bankruptcy proceedings.

Second, *Deitz*'s strict reading of § 108(c) defeats the purpose of that statute and of § 6503 of the Tax Code. "Quite obviously, the reason for the rule is that it would be unfair to allow the statute to run against the government's right to enforce a tax lien when, even if the government did bring suit, it couldn't collect because it couldn't 'get at' the taxpayer's assets," *Molina*, 99 B.R. at 795 (quoting *United States v. Verlinsky*, 459 F.2d 1085, 1088 (5th Cir.1972)). It would also be unfair to allow taxpayers to escape their tax liabilities by protecting their assets in bankruptcy until the statute of limitations expired, *Id.; Brickley*, 70 B.R. at 115. This would be the result, however, if the rule is not applied to suspend the three year period for nondischargeability because a discharged tax debt is not collectible even if the six year tax collection period has not expired, *see Molina*, 99 B.R. at 795; *Brickley*, 70 B.R. at 115. Accordingly, the Court concludes that the three year period of § 523(a)(1)(A) was suspended during the course of Debt-

or's prior Chapter 13 proceeding, and as a result Debtor's 1984 and 1985 tax debts are nondischargeable.

## II.

In an attempt to render the 1981 through 1983 tax debts nondischargeable, the IRS invokes § 523(a)(1)(B)(ii), which excepts from discharge any tax debt with respect to which a return "was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition," 11 U.S.C. § 523(a)(1)(B)(ii) (1990). The 1981 through 1983 tax debts were filed on June 20, 1986, which was after their due dates but not within two years of the August 2, 1989 filing date. Thus, on the face of the statute it appears that these debts should not be excepted from discharge, but the IRS again argues that the two year time period was suspended during the pendency of Debtor's prior Chapter 13 proceeding.[4]

The positions of the parties again revolve around § 108(c) of the Bankruptcy Code and § 6503 of the Tax Code, but there are no cases which apply these statutes to the dischargeability provision of § 523(a)(1)(B)(ii). Debtor renews his contention that the provision does not create a two-year statute of limitations or tax collection period and that it simply enumerates which tax debts would remain nondischargeable. For the same reasons as were discussed above, this view is unrealistic. As was the case with § 523(a)(1)(A), the two year limitation in § 523(a)(1)(B)(ii) sets a time frame in which the IRS can reasonably be expected to collect or otherwise enforce tax debts, *see In re Greenstein*, 95 B.R. 583, 585 (Bankr.N.D.Ill.1989), and it would be unfair to allow taxpayers to escape their tax liabilities by protecting their assets in bankruptcy proceedings until the collection time has lapsed.

Debtor contends that it was not engaged in a tax avoidance scheme with respect to the 1981–1983 debts because those debts were not scheduled as priority debts in the Chapter 13 plan and therefore they were subject to discharge in the earlier proceeding. The fact remains that they were not discharged, however, because the Chapter 13 proceeding was dismissed for nonpayment, and the IRS was prevented from collecting the debts during the pendency of the proceeding. Accordingly, the above policy concerns justify suspending the two-year time period for dischargeability under § 523(a)(1)(B)(ii) during the prior bankruptcy proceeding.

## III.

Finally, the dischargeability of the penalties associated with Debtor's tax debts is governed by § 523(a)(7), which states that a debt will not be discharged to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection, or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition ...

11 U.S.C. § 523(a)(7) (1990). Debtor contends that the penalties associated with his 1981–1985 tax debts fit within the § 523(a)(7)(B) exception because the tax debts arose before three years before the petition filing date. To determine the validity of this assertion, two questions need to be answered. First, was the three-year limitation period suspended during the pendency of the earlier Chapter 13 proceeding? Because the same policy implications are present with regard to the collection of tax penalties as are present with regard to the collection of the underlying taxes, the Court answers this question in the affirmative.

The next question is what is the "transaction or event" which triggers this

---

**4.** 494 days elapsed from June 20, 1986 to October 27, 1987, and 43 days elapsed from June 20, 1989 through August 2, 1989, totalling 537 days.

Using this logic, the two year (730 day) limitation period did not expire.

provision? Debtor argues that the April 15 due dates for the taxes triggered the provision, and that as a result the penalties for the years 1981–1983 are dischargeable regardless of whether the three year period was suspended during the Chapter 13 proceeding.[5] On the other hand, the IRS contends that the June 20, 1986 filing of the returns for these taxes was the triggering event, and that the suspended three year period has not yet expired and the tax penalties for the years 1981–1983 remain nondischargeable.

The IRS's position was discredited *de facto* in *In re Roberts,* 94 B.R. 707 (Bankr. N.D.Okl.1989), *aff'd,* 906 F.2d 1440 (10th Cir.1990), wherein the Bankruptcy Court determined that tax penalties associated with taxes payable more than three years prior to the filing of the petition date were dischargeable, although the debtor had not filed any returns for the tax years in question and the underlying tax debts were therefore nondischargeable, *Id.* at 709. Despite the fact that tax returns might facilitate the calculation of penalties, it is apparent from this decision that penalties can be assessed without returns. Therefore, it is logical to conclude that tax returns do not trigger the application of § 523(a)(7)(B).[6]

Moreover, on the face of the stipulated facts it appears that the penalties are not related to anything found on the returns; instead it appears that the penalties resulted from Debtor's failure to timely file the returns. Accordingly, the penalties were incurred on the first day that the returns were late, *see* 26 U.S.C. § 6721(a)(2)(A) (1990) (imposing penalties for late payment), i.e. after the 15th day of April following the close of the taxable year, 26 U.S.C. § 6072(a) (1989). Therefore, in the instant case, the "transactions or events" giving rise to Debtor's 1981–1985 tax penalties were the absence of tax returns on April 16, 1982, 1983, 1984, 1985, and 1986, respectively.

The Court concludes that because the three year period was suspended during the pendency of the prior Chapter 13 proceeding, the penalties associated with the 1984 and 1985 tax debts (due on April 15, 1985 and 1986, respectively) do not fit under the § 523(a)(7)(B) exception and are not dischargeable. The penalties associated with the 1981–1983 tax debts, due on April 15, 1982, 1983, and 1984, respectively, do fit under the exception, however, even though the three year period was suspended. As a result, those penalties are not protected from discharge.

The precise breakdown of tax debts and tax penalties for each year was not among the parties' stipulated facts. As a result, in this order the Court is only making a general determination of the dischargeability of the tax debts and penalties, and specific dollar amounts shall be determined at a later hearing. Accordingly,

IT IS ORDERED that Debtor's tax penalties for tax years 1981, 1982, and 1983 are dischargeable, and Debtor's motion for summary judgment is therefore granted in part and denied in part; and it is

FURTHER ORDERED that Debtor's tax debts for the years 1981 through 1985 are not dischargeable, and that Debtor's tax penalties for the years 1984 and 1985 are not dischargeable, and the IRS's motion for summary judgment is therefore granted in part and denied in part; and it is

FURTHER ORDERED that a hearing shall be scheduled to determine the precise

---

**5.** 1290 days elapsed from April 15, 1984 (the due date for 1983 taxes) to October 27, and 43 days elapsed from June 20, 1989 through August 2, 1989, totalling 1333 days. Using this logic the 1981–1983 taxes were not due within the suspended three-year (1095 day) limitation period. However, 925 days elapsed from April 15, 1985 (the due date for 1984 taxes) to October 27, 1987, and 43 days elapsed from June 20, 1989 through August 2, 1989, totalling 968 days. Therefore, the 1984 and 1985 taxes were due within the suspended three-year period.

**6.** The IRS cites *In re Burns,* 887 F.2d 1541 (11th Cir.1989) for the proposition that the filing of the return is the triggering "transaction or event." Actually, that proposition was offered by the IRS in that case, *Id.* at 1542, but the Circuit Court never made such a ruling. In fact, that case was cited a number of times in *In re Roberts* for its literal and broad reading of the tax penalty exception in § 523(a)(7)(B), *Roberts,* 906 F.2d at 1444, 1445.

amount of the tax penalties to be discharged and the amount of penalties and tax debts which are not dischargeable.

IT IS SO ORDERED.