In re Louis & Kathleen
TIBALDO, Debtors.

Louis & Kathleen TIBALDO, Plaintiff,

v.

The UNITED STATES of
America, Defendant.

Bankruptcy No. SA 93–12950 JR.
Adv. No. SA 94–1837 JR.

United States Bankruptcy Court,
C.D. California.

March 7, 1995.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Debtors brought this Motion for Summary Judgment (the "Motion") to have this court determine that certain tax liabilities were discharged in their Chapter 7 case. The Internal Revenue Service (the "IRS") opposed the Motion and filed its own Motion for Summary Judgment (the "Cross-motion") to have the court fix Debtors' tax liabilities for the tax years in question. I took the matter under submission.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF FACTS

The parties have stipulated that the following facts are undisputed. Louis M. Tibaldo and Kathleen E. Tibaldo were married on July 2, 1983. Debtors did not timely file, nor did they receive an extension for filing, a personal income tax return for the taxable years 1982 through 1986 and 1989. On June 11, 1984, Louis M. Tibaldo untimely filed his income tax returns for 1982 and 1983 under

the filing status "single." [1] On October 10, 1990, Kathleen E. Tibaldo untimely filed her income tax returns for 1982 and 1983 under the filing status "single." Also on October 10, 1990, Debtors jointly filed income tax returns under filing status "married" for 1984 through 1986 and 1989.

On November 5, 1990, Debtors filed for bankruptcy under Chapter 13. On March 5, 1991, their Chapter 13 case was dismissed. On March 22, 1993, Debtors filed for Chapter 7 bankruptcy. On July 30, 1993, a discharge was entered in the Chapter 7 case. Debtors have filed the Motion contending that in their Chapter 7 case, their tax liability was discharged. The IRS rejects Debtors' contention and filed the Cross-motion for summary judgment.

## DISCUSSION

■ The question presented by the motions is whether the two-year period of exception to discharge, provided by § 523(a)(1)(B)(ii) of the Bankruptcy Code (the "Code") [2], is suspended by 26 U.S.C. §§ 6503(b) [3] and (h) [4] as incorporated by Code § 108(c) [5] not only during the pendency of a bankruptcy, but also for six months afterward.

Debtors argue that their tax liability for the years 1982 through 1986 and 1989 has

been discharged pursuant to Code § 727(b) because the two-year exception to discharge of tax liabilities of § 523(a)(1)(B)(ii) expired before Debtors filed their Chapter 7 bankruptcy. Debtors respond that under § 523(a)(1)(B)(ii), the two-year period for dischargeability was not tolled by the filing of their Chapter 13 case. Additionally, Debtors argue that if the tolling provision applies to the two-year exception to discharge period then: 1) the time period after the dismissal of their Chapter 13 case still exceeds the two-year statutory limit of § 523(a)(1)(B)(ii); and 2) the suspension of time applies only when the debtor files for Chapter 7 protection within six months after a dismissal of a Chapter 13 case.

The IRS contends that the two-year exception to discharge period provided by § 523(a)(1)(B)(ii) was suspended not only during the pendency of Debtors' Chapter 13 bankruptcy, but also for six months after the dismissal of that case. The IRS, therefore, asserts that the exception to discharge period provided by § 523(a)(1)(B)(ii) did not expire before Debtors filed this case and Debtors' tax liability for 1982 through 1986 and 1989 is not dischargeable.

Two courts have addressed this question. *See Matter of Stoll*, 132 B.R. 782 (Bankr. N.D.Ga.1990); *Charles Rex Teeslink v. Unit-*

---

1. The parties agree that Louis M. Tibaldo's tax debts for 1982 and 1983 have been discharged.

2. The Code is set forth in 11 *U.S.C.* §§ 101–1330 (1994). Section 523(a)(1)(B)(ii) provides, in relevant part:

   A discharge under § 727 ... of this title does not discharge an individual debtor from any debt (1) for a tax ... (B) with respect to which a return, if required ... (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition....

3. Section 6503(b) provides, in relevant part:

   The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any state ... and for 6 months thereafter.

4. Section 6503(h) provides, in relevant part:

The running of the period of limitations provided in section 6501 [three year statute of limitations for assessing taxes] or 6502 [six year statute of limitations on collection of taxes] on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and ... (2) for collection, 6 months thereafter.

5. Section 108(c) provides, in relevant part:

[I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay ... with respect to such claim.

ed States of America, 165 B.R. 708 (Bankr. S.D.Ga.1994). The *Stoll* court reasoned that § 523(a)(1)(B)(ii) "sets a time frame in which the IRS can reasonably be expected to collect tax debts, *see In re Greenstein,* 95 B.R. 583, 585 (Bankr.N.D.Ill.1989), and it would be unfair to allow taxpayers to escape their tax liabilities by protecting their assets in bankruptcy proceedings until the collection time has lapsed." *Stoll* at 786. The *Teeslink* court agreed with the *Stoll* court's holding that although on its face § 523(a)(1)(B)(ii) may not fall within the literal language of § 108(c) and, therefore, § 6503 may not literally apply to § 523(a)(1)(B)(ii), the legislative history of § 108(c) indicates that the two-year period for dischargeability provided by § 523(a)(1)(B)(ii) is suspended during a bankruptcy by § 6503 as incorporated by § 108(c).[6] *Teeslink* at 711–12.

█ This court agrees with the reasoning of the *Stoll* court.[7] As shown by *Stoll,* the application of § 6503 through § 108(c) to § 523(a)(1)(B)(ii) is essential to prevent a taxpayer from improperly shielding assets from tax liability. It is unlikely that Congress intended the exception from discharge period to run during a bankruptcy when the IRS is automatically stayed from collecting taxes. This court, therefore, finds that the two-year period for dischargeability is suspended as long as the automatic stay precludes the IRS from proceeding against a debtor in bankruptcy.

Debtors next assert that the two-year period for dischargeability applies only when the debtor files for Chapter 7 protection within six months after a dismissal of a Chapter 13 case.

The IRS responds that, regardless of whether the Chapter 7 was filed within six months after the dismissal of a Chapter 13 case, the two-year exception to discharge period provided by § 523(a)(1)(B)(ii) is suspended not only during the pendency of Debtors' previous Chapter 13 bankruptcy, but also for six months after the dismissal of the Chapter 13 bankruptcy.

The Ninth Circuit agrees with the IRS's interpretation of the suspension issue. It has determined that the suspension of the two-year period extends for six months after the dismissal of a previous bankruptcy. *In re West,* 5 F.3d 423 (9th Cir.1993).[8] The court found that the six-month extension beyond the suspension

> [I]llustrates a legislative recognition that interruption in collection activity necessitates additional time once the IRS is again free to pursue tax debtors. Although the legislative history is bereft of reasons for granting the extension, common sense dictates that such a period was given in order

---

**6.** The legislative history of § 108(c) strongly suggests that § 108(c) incorporates § 6503 for the purposes of bankruptcy proceedings. The legislative history of § 108(c) states, in relevant part:

> [T]he Internal Revenue Code suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for six months thereafter (sec. 6503(b) of the [Internal Revenue] Code). The Amendment applies this rule in a title 11 proceeding.

S.Rep. No. 989, 95th Cong., 2nd Sess. 30–31 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5816, *construed in Matter of Stoll,* 132 B.R. at 785.

**7.** Other courts have applied parallel reasoning in finding that the three year priority period for income tax claims in bankruptcy cases provided by 11 U.S.C. § 507(a)(7)(A)(i) is suspended during a bankruptcy by operation of § 6503 as incorporated by § 108(c). *See In re Molina,* 99 B.R. 792 (Bankr.S.D.Ohio 1988); *In re Brickley,* 70 B.R. 113, 114 (9th Cir. BAP 1986).

**8.** In *West,* the court was to determine whether certain taxes were dischargeable pursuant to § 523(a)(1)(A). To be dischargeable under § 523(a)(1)(A), the taxes must have priority status under § 507(a)(7). The *West* court found that although by its terms § 108(c) applied only to non-bankruptcy law, § 108(c) evinced a concerted legislative policy to preserve the collectibility of certain tax claims and that a literal interpretation of § 108(c) would defeat that policy since "[i]nterpreting § 108(c) literally would allow a debtor to create an 'impenetrable refuge' by filing a bankruptcy petition, waiting for § 507(a)(7)'s priority periods to expire, and then dismissing the case and refiling shortly thereafter." *In re West,* 5 F.3d at 426 (quoting *Florence v. IRS (In re Florence),* 115 B.R. 109, 111 (Bankr.S.D.Ohio 1990)). Therefore, the court concluded that an application of § 6503's stay to § 507(a)(1)(A)'s priority period was consonant with § 108(c)'s legislative purpose and, moreover, was necessary to foreclose frustration of the Code's intricate scheme for the payment of tax claims. *In re West,* 5 F.3d at 426.

to provide the IRS with sufficient time to restart and refocus its collection efforts once able to do so.

*Id.* at 427.

Moreover, a plain reading of the legislative history of § 108(c) clearly shows that the length of a suspension imposed by § 6503 includes a six-month period after the end of a bankruptcy case such that

> [T]he statute of limitations on collection of nondischargeable Federal tax liability of a debtor will resume running after 6 months following the end of the period during which the debtor's assets are in control or custody of the bankruptcy court. This rule will provide the Internal Revenue Service adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.

S.Rep. No. 989, 95th Cong., 2nd Sess. 30–31 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5816–17, *construed in Matter of Stoll,* 132 B.R. at 785.

 Based on the foregoing, this court concludes that a proper interpretation of the suspension provided by § 6503 as incorporated by § 108(c) includes not only the number of days that the automatic stay was in effect, but also a six-month period following the lifting of the stay. Additionally, because the court has already adopted the reasoning of *Stoll* and found that the suspension, provided by § 6503 as incorporated by § 108(c), applies to the exception to discharge period provided by § 523(a)(1)(B)(ii), the six-month extension beyond the lifting of the automatic stay in accordance with the reasoning in *West* should likewise apply.

## CONCLUSION

Debtors jointly filed tax returns for years 1984 through 1986 and 1989 on October 10, 1990. Debtors' Chapter 13 case was filed on November 5, 1990 and was dismissed on March 5, 1991. The IRS was, therefore, automatically prevented from collecting Debtors' overdue taxes for exactly four months. The suspension of the running on the IRS's time to collect the past due taxes remained in effect for six months after Debtors' Chapter 13 case was dismissed. Accordingly, upon dismissal of the Chapter 13 case, the IRS was entitled to 29 months (six months plus two years minus the month of October 1990) to collect Debtors' taxes. Debtors filed their Chapter 7 case on March 22, 1993, approximately 24 months and 17 days after their Chapter 13 case was dismissed on March 5, 1991. Since the period set aside for the IRS to complete collection of past due taxes did not expire for approximately another four and one-half months after Debtors filed their Chapter 7 case, Debtors' past due taxes for the years 1984 through 1986 and 1989, as well as Kathleen E. Tibaldo's individual taxes (returns filed October 10, 1990) for the years 1982 and 1983, are not dischargeable.[9]

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.

---

**9.** The IRS also argues that Debtors' 1989 taxes are priority claims under 11 U.S.C. § 507(a)(7)(A)(1) because the taxes were filed within three years of the filing of the petition. Therefore, the taxes are non-dischargeable under

11 U.S.C. § 523(a)(1)(A). Because the court has already found plaintiffs' 1989 taxes to be nondischargeable under § 523(a)(1)(B)(ii), the court need not address this argument.