**In re Brian Stanford HARTDEGEN and Candice Lori Hartdegen, Debtors.**

**In re Jack HEATH Jr. and Deloris H. Heath, Debtors.**

**Bankruptcy Nos. 86–01912, 86–01914.**

United States Bankruptcy Court, N.D. Alabama.

Sept. 30, 1986.

Thomas M. Semmes, Anniston, Ala., for debtors.

## FINDINGS AND CONCLUSIONS ON CHAPTER 13 PLANS

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

*Introduction —*

Each of the above-styled cases (respectively referred to as "Hartdegen" and "Heath") was commenced in this Court on March 10, 1986, by a petition filed under title 11, chapter 13, United States Code, and remains pending under said chapter of the bankruptcy statute. Each case came before the Court for a hearing on confirmation of the chapter 13 plan,[1] on July 22, 1986, when confirmation was refused for failure of the debtors to establish that the plan was proposed in good faith.[2] The difficulty encountered was similar to that discussed at length in *In re Cash*, 51 B.R. 927 (Bankr.N.D.Al.1985). All three cases display an untimely exercise of a debtor's

---

1. 11 U.S.C. § 1324.

2. 11 U.S.C. § 1325(a)(3).

3. Official Bankruptcy Form 10. See Bankruptcy Rule 1001.

4. Bankruptcy Rule 1009.

right to amend a Chapter 13 Statement[3] "at any time before the case is closed."[4] This occurred by adding to part "12. *Debts*" a debt and creditor not previously disclosed, and filing the amendment so tardily as to prevent or nearly prevent the creditor from filing a timely proof of claim.[5]

*Findings of Fact —*

Taking judicial notice of the matters appearing of record in the court files for Hartdegen and Heath and a common calendar and upon duly considering these matters, the bankruptcy judge finds the relevant facts as follows:

1. In each case the meeting of creditors, pursuant to 11 U.S.C. § 341(a), was first set for April 16, 1986;

2. Ninety days after the first date set for the meeting of creditors ended on Wednesday, July 15, 1986;

3. On July 14, 1986, an amendment to the Chapter 13 Statement was filed in each case, adding a debt in the sum of $980.12 owed to Northeast Alabama Regional Medical Center in Hartdegen and a debt in the sum of $1,332.16 owed to Fort McClellan Credit Union in Heath;

4. In each case, no mention of the debt or creditor had been made in the Chapter 13 Statement prior to the amendment;

5. In each case, the bankruptcy court clerk mailed a notice of the amendment to the creditor, on July 15, 1986;

6. In each case, a proof of claim upon the debt added by the amendment was not filed until after July 15, 1986;

7. At the time of the confirmation hearing, the plan in Hartdegen proposed a composition of unsecured claims by which approximately 52.42% of each allowed unsecured claim would be paid, and the plan in

---

5. With relatively minor exceptions—none being relevant here—a proof of claim in a chapter 7 or 13 case "shall be filed within 90 days after the first date set for the meeting of creditors." Bankr.Rule 3002(c).

Heath proposed to pay 100% of allowed unsecured claims;

8. No objection to confirmation of the plan was filed in either case;

9. No formal order denying confirmation of the plan was entered in either case, pending the proposal of a modification of the plan;

10. The plan in Heath was modified August 5, 1986, by a provision that the debt owed to Fort McClellan Credit Union be paid directly by the debtors to the creditor at the rate of $22.20 per month for 60 months and that a chapter 13 discharge would not discharge the debt;

11. The modified plan in Heath was confirmed August 11, 1986; and

12. In Hartdegen, a modification of the plan was filed September 22, 1986, and provided that the debtors would pay directly to Northeast Alabama Regional Medical Center $8.56 per month for 60 months and that a discharge in the chapter 13 case would discharge the debt.

*Conclusions by the Court —*

Since writing the opinion in *Cash, supra,* the procedure there outlined has been criticized by a close friend and bankruptcy judge on the ground that the Court should not have considered whether the plan was proposed in "good faith" because no party in interest had asserted a formal objection to confirmation of the plan—but in the critic's district 11 U.S.C. § 1324 (which directs that "the court shall hold a hearing on confirmation of the plan") is not followed unless an objection is made to confirmation of the plan. Thus, by that procedure, in the absence of a formal objection to confirmation, the Court gives *no* consideration to whether the plan should be confirmed under the standards of 11 U.S.C. § 1325. If, of course, no consideration of the plan is to be given by the Court, it would be contradictory for it to consider whether the plan has been proposed in good faith. By such a procedure, it is not only unnecessary to hold a confirmation

hearing upon a chapter 11 plan[6] or a chapter 13 plan—absent a formal objection to confirmation—the order confirming such a plan[7] becomes a mere rubber-stamp order by the Court, which more appropriately should be affixed to the plan by the clerk.

If it had been intended that the bankruptcy court—absent a formal objection to confirmation—should merely place its imprimatur upon the plan, it appears that Congress easily could have said that, *i.e.*:

> § 1325(a). After expiration of the time fixed for filing objections to confirmation of the plan, if no objection has been filed, the clerk shall forthwith enter in the case a certificate that no timely objection was filed and the plan shall thereby be adjudged to be confirmed.

When a debtor files a schedule of debts in which a serious omission exists and does not correct the error until after serious injury has been thereby inflicted upon a creditor of the debtor, any proposed plan which does not remedy the injury cannot by any mental twist be said to be proposed in good faith, it being then immaterial whether the error was inadvertent or caused by substantial negligence or indifference or if the omission was intentional. It probably comes as no shock to my friend or others that I continue not to believe that Congress *intended or provided* that a chapter 13 plan not proposed in good faith should be confirmed by a bankruptcy court, if a formal objection to confirmation was not registered. Congress can, of course, so provide in the future, if anyone is of a mind to advocate that policy to Congress.

After the modification of the plans, the question to be resolved by the Court was whether the modifications obviated a denial of confirmation for want of good faith in the proposal of the plans as modified. It appeared to the Court that the modification in Heath did so, and that plan has been confirmed. It also appears that the modification in Hartdegen permits confirmation of the plan in that case.

---

**6.** But see 11 U.S.C. § 1128.

**7.** See 11 U.S.C. §§ 1129 and 1325.

Lacking only a few cents, the modification in Hartdegen provides for the debtors to make direct payments to the hospital of 52.42% of the debt owed to that creditor—the same percentage of allowed unsecured claims to be paid through the trustee. The few cents' difference is *de minimis* and not to be given any weight.

Bankruptcy Rule 3002(a) provides that an "unsecured creditor [sic] must file a proof of claim ... in accordance with this rule for the claim ... to be allowed." There are various safeguards written into chapter 13 for the protection of holders of "allowed" claims,[8] but the principal detriment here from not having an "allowed" claim (by virtue of not having timely filed a proof of claim) would be the (apparently unwritten) rule that the trustee would not make any payment to the creditor.

■ The effect of the modification of the plan in each case is to provide for a direct payment to the creditor which is equivalent to that to be made by the trustee on "allowed" unsecured claims. This is not a classification of unsecured claims as permitted under the provisions of 11 U.S.C. § 1322(b)(1), but it is similar. It provides a different treatment for this omitted debt which is given a de facto classification. The difference is that payments to the creditor are to be made directly by the debtors rather than through the chapter 13 trustee. This discrimination could not be "unfair" [9] if the creditor held an "allowed" claim, and by analogy (considering the requirement of "good faith") it must not here be unfair. It does not appear here to be an "unfair" discrimination. This is not, however, intended to be a gross or blanket endorsement of the practice followed in these cases, and any deviation from the standard that the debtors are making a permissible, bona fide effort to correct an honest mistake is to be condemned as not evidencing "good faith."

■ Perhaps the crucial question is whether it is permissible for a chapter 13 plan to provide for payments on a debt for which there is no allowed claim, provided that such payments will be made directly to the creditor by the debtor. Section 1322(b)(10) of the bankruptcy statute permits a plan to "include any ... appropriate provision not inconsistent with" title 11, United States Code. This appears to be a statement of policy that great latitude is to be given a chapter 13 debtor in formulating a plan. In 11 U.S.C. § 1326(c) it is provided that the trustee shall make the payments to creditors under the plan, except as otherwise provided in the plan or in the order confirming the plan. The two provisions just noted permit a chapter 13 debtor to include in the chapter 13 plan a provision such as that embodied in the two modifications proposed in the cases at hand, unless otherwise prohibited.

Section 524 of the bankruptcy statute deals with the effect of a discharge and, in subsections (c) and (d) restricts so-called "reaffirmation agreements," but in subsection (f) it is stated that nothing in subsections (c) and (d) "prevents a debtor from voluntarily repaying any debt." It appears to the Court that the modifications of the plans are in harmony with the policy of this provision and that the bankruptcy statute offers no impediment otherwise to confirmation of a plan containing such a provision as is set forth in the modifications.

■ The portion of the modification in Hartdegen which provides that the added debt shall be discharged and the provision in Heath which provides that the added debt shall not be discharged appear on the surface to raise the question of whether or not a chapter 13 debtor may waive the discharge provided for in 11 U.S.C. § 1328(a) as to one or more specific debts as opposed to waiving the discharge generally as may be done under the provisions of that subsection. It does not, however, appear that these provisions are essential to obtaining confirmation of the plan in either case, and the Court will not consider such a question in the present context.

---

**8.** *See, e.g.,* 11 U.S.C. § 1325(a)(4) and (5).

**9.** 11 U.S.C. § 1322(b)(1).

An order confirming the chapter 13 plan will also be entered in Hartdegen, as was done in Heath.