In re Toby J. GROGAN and
Amy J. Grogan, Debtors.

Bankruptcy No. 91–91496–13.

United States Bankruptcy Court,
E.D. California.

July 23, 1993.

Spencer P. McGrew, Modesto, CA, for debtor.

Bridgette M. Gibson, Sp. Asst. U.S. Atty., Sacramento, CA, for IRS.

## MEMORANDUM OF DECISION ON OBJECTION TO CLAIM

JOSEPH W. HEDRICK, Jr., Bankruptcy Judge.

This matter came before the court on Toby and Amy Grogan's ("the Grogans") objection to the allowance of a post-confirmation proof of claim filed by the Internal Revenue Service ("the IRS"). The IRS was represented by Bridgette M. Gibson, Esq., Special Assistant U.S. Attorney. The Grogans were represented by Spencer P. McGrew, Esq., Faulkner and McGrew, Modesto, California.

The hearing was held in the United States Bankruptcy Court for the Eastern District of California, Modesto Division, before Judge Joseph W. Hedrick, Jr., on February 10, 1993. At the hearing, the IRS submitted a written response to the Grogans' objection. Debtors' counsel requested fifteen days to reply to the IRS' response. IRS requested an additional fifteen days to answer the Grogans' reply. Both requests were granted. Time for the filing of briefs having expired, the matter is deemed submitted, and the court now renders this decision.

## BACKGROUND AND FACTS

On September 21, 1990, the Grogans filed for Chapter 13 reorganization; they voluntarily dismissed the case six months later on February 27, 1991. The Grogans filed their second Chapter 13 petition on May 1, 1991. Their scheduled debts in the second Chapter 13 case included: $58,785.00 secured debt, $12,733.00 priority unsecured debt, and $76,681.21 in general unsecured debt, for a total debt amount of $148,199.21. The Grogans' Chapter 13 plan was confirmed without objection on September 25, 1991, and called for payment of $796.00 for secured claims, 100% payment

for priority claims, and no payment for unsecured claims.

The IRS was listed in the Grogans' schedules as having a priority debt of $12,689.00 and was given proper notice of the Grogans' confirmation hearing. However, it was not until after confirmation that the IRS filed their proof of claim consisting of an $82,641.54 secured claim, a $2,167.90 priority claim, and a $233.81 unsecured claim. Although filed after confirmation, the IRS' proof of claim was filed prior to the December 10, 1991, claims bar date. The IRS subsequently amended its claim on September 24, 1992, to $670.30 secured, $26,854.29 priority, and $85,535.26 unsecured.

The Grogans objected to the IRS proof of claim and filed a memorandum of points and authorities in support of their objection.[1] Their two main objections to the IRS' claims were: (1) that confirmation of their plan bound the IRS to the claim amounts specified therein, and (2) that the taxes for which the IRS claimed priority status did not meet the requirements for priority treatment under the Code.

The IRS filed a response to the Grogans' objection arguing that the disputed taxes did meet the requirements for priority treatment under the Code. In its response to the Grogans' objection, the IRS did not address whether or not confirmation of the reorganization plan bound them to the amounts stated in the plan.

## DISCUSSION

I. DOES CONFIRMATION OF A REORGANIZATION PLAN BAR SUBSEQUENTLY FILED PROOFS OF CLAIM?

The debtors' confirmation argument is a valid recitation of hornbook law about the binding effect of a confirmed plan. However, the argument is too general and fails to address the limited binding effects of a plan confirmed prior to the claims bar date.

While Bankruptcy Code Section 1327(a) provides that a confirmed plan is binding upon the debtor and the creditor "whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan," there is a definite limit to the res judicata effect of a confirmed plan with respect to resolution of creditors' claims. The court in *In re Minick,* 63 B.R. 440, (Bankr.D.Colo.1986), accurately describes this limit:

> [Section] 1327(a), which states that "[t]he provisions of a confirmed plan bind the debtor and each creditor ..." does not say and certainly does not mean that something that is not a "provision of a confirmed plan"—that is, the precise amount of each creditor's claim—is "binding" when it has not yet been determined.

*In re Minick,* 63 B.R. at 441. The court in *Piedmont Trust Bank v. Linkous (In re Linkous)* 141 B.R. 890 (W.D.Va.1992), *aff'd,* 990 F.2d 160 (4th Cir.1993), addressed this limit in a more broad fashion:

> Generally, § 1327(a) does provide a res judicata effect to the terms of a confirmed plan. This effect, however, is premised on the notion that the bankruptcy court has addressed in the confirmed plan and order only those issues that are properly within the scope of the confirmation hearing. Issues that were not mature for decision and could not be appropriately resolved in either the confirmation hearing or in the order confirming the plan are not barred.

*In re Linkous* 141 B.R. at 898.

The Grogans' assertion that their confirmed plan binds all creditors to its contents fails to address the time window that can exist between the date when a plan is confirmed and the claims bar date. Bankruptcy Rule 3002(c) states that a proof of claim shall be filed within ninety days after the first date set for the meet-

---

1. While the Grogans' objection was filed in response to the original claim by the IRS, the points and authorities in support of their objection was directed towards the IRS' amended proof of claim. The amended proof of claim was submitted 29 days after the Grogans filed their objection. The Grogans do not contend that the amendment was improper.

ing of the creditors. In the Eastern District of California, as in many other districts, the section 341 meeting of the creditors and the confirmation hearing are often scheduled for the same day. This creates a ninety-day window between confirmation of the plan and the claims bar date.[2] It is common practice for courts to approve reorganization plans prior to the claims bar date. *See, e.g., In re Ferguson*, 134 B.R. 689 (Bankr.S.D.Fla.1991) (emphasizing that reorganization plans are routinely confirmed prior to judicial resolution of all claims); *In re Minick*, 63 B.R. at 442 ("Requiring complete and final judicial resolution of all disputes as to claim amounts before confirmation of a plan is contrary to well-established custom and practice, is unsupported by anything in the statute or case law, and would inordinately delay plan confirmation to no good purpose and indeed to the detriment of all parties in interest, including creditors.").[3]

Allowing proofs of claim to be filed after the confirmation hearing may seem contrary to the strong concern for finality in a bankruptcy confirmation order, but finality is dependent upon both the promptness of claims filed by the creditors and the completeness and accuracy of the debtor's schedules. For example, the debtor can unilaterally increase the likelihood that his plan will be final by either adequately providing in his plan for those creditors who will have priority claims, or by filing accurate proofs of claim on behalf of any creditors whose claims are not filed in time for the confirmation hearing pursuant to section 501(c). *See generally* 3 *Collier On Bankruptcy* ¶ 501.03, (Lawrence P. King ed., 15th ed. 1992).

The IRS disputed the amount and the priority of the claims listed by the Grogans

in their plan and filed proofs of claim prior to the bar date, but after plan confirmation. The fact that the IRS was provided for in the Grogans' plan, however, did not preclude the IRS from exercising its right to file a proof of claim. To limit the IRS to an amount determined solely by the debtor while the time to file proofs of claims had not yet expired would violate fundamental principals of bankruptcy claims practice.

Accordingly, the court determines that confirmation of the Grogans' plan did not bind the IRS to the amount provided for them in the confirmed plan, and did not bar them from filing proofs of claim prior to the claims bar date.

## II. DO THE DISPUTED TAXES MEET THE CODE'S CRITERIA FOR PRIORITY CLAIMS?

A determination that an unsecured tax claim qualifies for priority treatment under section 507(a)(7)(A) generally ensures that the claim will be paid in part or full in individual bankruptcies. For example, in an individual Chapter 7 case, when an unsecured tax claim is classified as priority, that tax debt is subject to a determination of non-dischargeability. 11 U.S.C. § 523(a). In an individual Chapter 11 case, the priority tax claim is both nondischargeable and must be fully paid through the plan within six years of its assessment. 11 U.S.C. § 1129(a)(9)(C). In a Chapter 13 case, the priority tax claim must be fully paid in deferred cash payments through the plan. 11 U.S.C. § 1322(a)(2). In a typical individual Chapter 7, 11 or 13 case, unsecured claims that do not qualify for priority treatment are discharged with little or no payment.

---

**2.** The order for the meeting of creditors in this case plainly states that claims may be filed before December 10, 1991, 90 days after the scheduled first meeting of creditors. In the Modesto Division of the Eastern District, the creditors' meeting is also the date of plan confirmation, unless there is an objection filed by a creditor pursuant to Bankruptcy Rule 2002(b)(2).

**3.** Since payments into a plan must begin no later than thirty days after its filing, 11 U.S.C.

§ 1326(a)(1), and payments can be distributed to creditors upon confirmation of a plan, 11 U.S.C. § 1326(a)(2), early confirmation disburses funds to the creditors sooner than if confirmation were delayed until the claims bar date, as some authors and judges prefer. *See, e.g.,* 2 David G. Epstein et al., *Bankruptcy,* 619 (1992), *In re Hartdegen,* 67 B.R. 230 (Bankr.N.D.Ala. 1986).

Section 507(a)(7)(A) requires a tax measured by income to have been due either within three years prior to the petition date or assessed within 240 days of the petition date in order to be afforded priority status.[4] *See generally* 3 *Collier On Bankruptcy* ¶ 507.04, (Lawrence P. King ed., 15th ed. 1992).

In their amended proof of claim, the IRS claimed $26,854.29 in priority tax debt. Although the Grogans have objected to the entire IRS proof of claim, their specific objection is that the amounts claimed as a priority tax claim for 1987 income taxes were due more than three years prior to filing and are too old to be afforded priority status.[5]

In this case, the Grogans' 1987 taxes were first due on April 15, 1988. The Grogans filed their first Chapter 13 case within three years of April 15, 1988, on September 21, 1990. This case lasted for 159 days and was dismissed on February 27, 1991. The Grogans filed their second Chapter 13 case on May 1, 1991, exactly three years *and fifteen days* from the date the 1987 taxes were first due. The Grogans argue that the date of their second Chapter 13 filing controls for calculation of the three-year period for determining priority taxes. The IRS contends, that the running of the three-year period was tolled during the 159–day pendency of the Grogans' first Chapter 13 case, and that the tax therefore is entitled to priority status.

As set forth previously, section 507(a)(7)(A) accords priority status to taxes that were either due within three years of filing, or were assessed within 240 days of the petition's filing. Where a bankruptcy is filed within those periods, courts, including the Ninth Circuit Bankruptcy Appellate Panel, have nearly unanimously considered the running of those periods to be suspended under section 108(c) as a statute of limitations. *See, e.g., Brickley v. United States (In re Brickley),* 70 B.R. 113 (Bankr. 9th Cir.1986); *Molina v. United States (In re Molina),* 99 B.R. 792 (Bankr. S.D.Ohio 1988); *In re Quinlan,* 107 B.R. 300 (Bankr.D.Colo.1989); *Montoya v. United States (In re Montoya),* 965 F.2d 554 (7th Cir.1992). Under this line of authority, the IRS' claim for the 1987 taxes is clearly entitled to priority status.

The Grogans urge the court to follow the reasoning and result of a reversed and highly criticized Colorado bankruptcy court decision holding that the time periods specified in 507(a)(7)(A) should not be treated as statutes of limitations that are tolled during bankruptcy. *In re Deitz,* 106 B.R. 236 (Bankr.D.Colo.1989), *rev'd, United States v. Deitz (In re Deitz),* 116 B.R. 792 (D.Colo. 1990).

*Deitz* was a Chapter 13 case followed by a Chapter 7 case where the IRS assessed taxes more than 240 days before the Chapter 7 filing, but had assessed taxes within 240 days of the first Chapter 13 filing.

---

**4.** 11 U.S.C. § 507(a)(7)(A) provides as follows:

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts—
(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the filing of the petition.
(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of filing of the petition; or
(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(c) of this title, not assessed before, but assessable, under applicable law or by agreement, after the commencement of the case[.]

**5.** Although the amount of the IRS' priority claims listed in their proof of claim, less the claims listed by the Grogans in their confirmed plan, does not equal the 1987 tax liability, it is near that figure and the Grogans' arguments appear directed at the 1987 tax liability. The difference between the IRS' priority claims and the claims listed in the Grogans confirmed plan is $14,165.29; the amount of the 1987 tax liability is $16,428.62. The IRS listed tax periods 1987, 1988, 1989 and 1990 as priority claims for $16,428.62, $8,257.77, $670.35, and $1,497.55 respectively for a total priority claims amount of $26,854.29. The 1988–90 taxes are clearly taxes due within three years "before the date of the filing of the petition," as required by section 507(a)(7)(A). The only question and probable dispute is as to the 1987 taxes.

The IRS argued, in part, that the Debtors' prior Chapter 13 case suspended the 240–day period for the time that the section 362 stay for that case was in effect.[6] The *Deitz* court agreed that section 108(c) suspended the running of the six-year statute of limitations for collecting taxes articulated in 26 U.S.C. § 6503(b) until the automatic stay provisions of section 362 were lifted. The court did not, however, conclude that the period specified in section 507(a)(7)(A)(ii) was suspended. The court read section 108(c) literally and narrowly as applicable only to *non-bankruptcy* law. Since the period in section 507(a)(7)(A)(ii) was bankruptcy law, the *Deitz* court concluded that section 108(c) did not suspend the 240–day time period. Accordingly, the IRS claim was not entitled to priority status.

■ The literal reading and application of section 108(c) of the reversed *Deitz* decision is appealing, but this court agrees with established judicial interpretation regarding the applicability of section 108(c) in determining priority taxes. The Grogans properly state that section 108(c) applies to non-bankruptcy law, accurately report that section 507(a)(7)(A)(i) is bankruptcy law, and correctly argue that section 507(a)(7)(A) is not a statute of limitations. However, they ignore both congressional policy in passing section 108(c) and the reality of what can occur when a statute of limitations is suspended without the time period for determining tax priority being suspended as well.

Section 108(c) was passed in order to allow the IRS sufficient time to collect delinquent taxes following a Title 11 proceeding. *In re Brickley,* 70 B.R. at 116. If Congress saw the need to suspend the IRS' *six-year* statute of limitations during a Title 11 proceeding in order to give them adequate time to collect taxes, then Congress certainly did not intend to allow the *three-year* period for determining priority claims to run during that same time.

*Brickley,* 70 B.R. at 115. To argue that the statute of limitations should be tolled while the time limit for determining claims priority should run is both logically inconsistent and contradicts congressional policy; as mentioned previously, priority treatment usually indicates whether a claim will, as a practical matter, be paid.

The Grogans assert that because section 507(a)(7)(A)(i) is not a statute of limitations, section 108(c) does not suspend its running. This interpretation of sections 507(a)(7)(A) and 108(c) could lead to unique schemes of tax avoidance when one considers a debtor's ability to dismiss and refile cases. *In re Brickley,* 70 B.R. at 115. Debtors could merely wait until after the expiration of the three-year period for priority classification, dismiss their case, then refile. The taxes that were classified as priority debt in the initial bankruptcy would be classified as unsecured debt in the later filing. Thus taxes that were either nondischargeable or that the debtor was bound to pay through the Chapter 13 plan in the initial case become unsecured debt due to filing, dismissal, and refiling of a bankruptcy case. Thus while section 507(a)(7)(A)(i) is not a statute of limitations per se, it has the practical effect of acting as a statute of limitations. Congress clearly did not intend to allow the bankruptcy courts to be used as a vehicle for tax avoidance.

■ The Grogans also contend that *Brickley* is not on point because it involves a dismissed Chapter 13 followed by a Chapter 7, whereas the case at bar involves a dismissed Chapter 13 followed by another Chapter 13. While it is true that the cases cited for this court's position have been Chapter 13 cases followed by Chapter 7 cases, those decisions were not predicated on the type of proceeding involved. This court is well aware of the inherent differences between liquidations and reorganizations, but remains convinced that section 108(c) and section 507(a)(7)(A) apply both to

---

**6.** The IRS also argued that 26 U.S.C. § 6503(b) of the Internal Revenue Code extended that period for an additional six months. This court need not address that argument because it is not relevant to the case at hand. But the court notes that section 108(c) operates to extend section 507(a)(7)(A), and is unsure how 26 U.S.C. § 6503(b) operates to extend the time periods articulated in section 507(a)(7)(A).

Chapter 7 liquidations and to Chapter 13 reorganizations. *See* 11 U.S.C. § 103 (Chapters 1, 3, and 5, of Title 11 apply to Chapters 7, 11, 12, and 13). The Grogans' attempt to distinguish the *Brickley* case and other majority decisions from the instant case is unsuccessful.[7]

## CONCLUSION

Confirmation of a reorganization plan does not override Federal Rule of Bankruptcy Procedure 3002(c), which allows creditors ninety days following the first scheduled date for the meeting of creditors to file their proofs of claim. Confirmation of the Grogans' plan did not preclude the IRS from exercising their rights pursuant to Rule 3002(c). The post-confirmation, pre-bar date proofs of claim by the IRS must be allowed.

The court is not persuaded by the Grogans that the claims listed by the IRS are not priority claims pursuant to section U.S.C. § 507(a)(7)(A)(i). Notwithstanding that the 1987 taxes were first due slightly more than three years prior to commencement of the Grogans' second Chapter 13 case, the three year-period was suspended while the assets of the debtor were under control of the court during the Debtors' initial Chapter 13 case.

The court directs counsel for the IRS to prepare proposed findings of fact and conclusions of law and order consistent with the court's decision. These documents shall be served on all necessary parties and lodged with the court. If no objection is received by the court within eight days, the documents will be signed and entered.

7. The Grogans' last argument is that Bankruptcy Appellate Panel Decisions are not binding, even within the district from which they arose. Because the court is firmly convinced that the overwhelming majority of reported cases are quite consistent in their interpretation of sections 108(c) and 507(a)(7)(A), the court declines to address the binding effect of Bankruptcy Appellate Panel decisions.