**In re Charles Rex TEESLINK, Debtor.**

**Charles Rex TEESLINK, Plaintiff,**

v.

**UNITED STATES of America, Department of the Treasury, Internal Revenue Service, A Government Agency of the United States of America, and James D. Walker, Jr., Trustee, Defendants.**

Bankruptcy No. 91–10189.
Adv. Nos. 92–01077A, 93–01077A.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

March 14, 1994.

Louis Saul, Augusta, GA, for debtor/plaintiff.

Sean O'Conner, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendants.

## *ORDER*

JOHN S. DALIS, Bankruptcy Judge.

The matter before me is the disposition of two related adversary proceedings brought by debtor Charles Rex Teeslink against the United States of America, Department of the Treasury, Internal Revenue Service, A Government Agency of the United States of America ("IRS") and James D. Walker, Jr. the Chapter 7 case trustee. In adversary proceeding number 92–01077A debtor seeks a determination that tax liabilities for the years 1979 through 1986 were discharged in his chapter 7 case. In adversary proceeding number 93–01077A debtor seeks a permanent injunction to restrain the IRS from collecting pursuant to Notice of Levy any sum from debtor's annual salary at the Medical College of Georgia. Both adversaries having come on for trial together, consolidated for the purpose of final determination and having heard the evidence presented, I enter the following order.

*Adversary Number 92–01077A*

■ In this adversary debtor seeks to have his indebtedness to the IRS for taxes, penalties, and interest for the years 1979 through 1986 declared discharged in his chapter 7 case.[1] Bankruptcy Code § 727 provides for a general discharge in a chapter 7 case of all pre-petition debts of the debtor, except for debts provided for in 11 U.S.C. § 523. 11 U.S.C. § 727(b). Debtor was granted a general discharge in July 1993. In any inquiry to determine the dischargeability of a particular debt the creditor bears the burden of proving nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Accordingly, the IRS must prove that the tax liabilities at issue fall within one of the exceptions to the § 727 discharge noted in § 523.

Section 523(a) provides, in pertinent part:
(a) A discharge under section 727 ... of this title [11] does not discharge an individual debtor from any debt—
(1) for a tax or a customs duty—
(A) of the kind and for the periods specified in section ... 507(a)(7) of this title [11], whether or not a claim for such tax was filed or allowed;
(B) with respect to which a return, if required—
...
(ii) was filed after the date on which such return was last due, under applicable law

or under any extension, and after two years before the date of the filing of the petition; or
(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax[.]

The IRS contends that the liability for the tax in each of the contested years is made nondischargeable either by § 523(a)(1)(A) and one of parts (i)–(iii) of § 507(a)(7)(A),[2] or by § 523(a)(1)(B)(ii), or by debtor's willful attempts to evade his tax liabilities under § 523(a)(1)(C). I must make a determination as to each tax year in question whether that liability falls within one of the noted § 523 exceptions.

■ This analysis, ordinarily straightforward, is complicated by debtor's prior bankruptcy filing. Debtor initially filed a chapter 11 petition with this court on March 31, 1987. That proceeding was dismissed on October 15, 1990 without confirmation of a plan of reorganization. One hundred and seven days later, on January 31, 1991, debtor filed this case, his second chapter 11 petition. On August 27, 1992 this case was converted to Chapter 7. Debtor contends that his debts to the IRS are dischargeable, some returns having been filed more than three years prior to the date of conversion to chapter 7 (§ 507(a)(7)(A)(i)), and some relating to late returns filed within two years of that date (§ 523(a)(1)(B)(ii)). The IRS contends, how-

1. Debtor's complaint sought a determination as to 1987 liabilities as well, but debtor conceded at trial that his tax liability for 1987 is nondischargeable. In his post-trial proposed findings of fact, debtor contends that the IRS conceded that the 1979 tax liabilities are dischargeable. In an answer to debtor's interrogatories and in the pre-trial order, the IRS states that "except for a portion of the tax liability for 1979 and the statutory additions related to the 1979 tax year" the tax years at issue are nondischargeable. At trial, however, the IRS clarified its position that as to the 1979 liability, the penalty can be discharged, but not the tax itself. Based on these representations, I find that as to year 1979, only the tax liability and interest on that liability is at issue in this adversary.

2. 11 U.S.C. § 507(a)(7)(A) provides:
(a) The following claims and expenses have priority in the following order:

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts—
(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or
(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title [11], not assessed before, but assessable, under applicable law or by agreement, after the commencement of the case[.]

ever, that for purposes of determining the dischargeability of taxes, the periods prescribed under § 507(a)(7)(A) and § 523(a)(1)(B)(ii) are suspended during the pendency of the automatic stay in a debtor's prior bankruptcy and for six months thereafter.

Courts considering the effect of a debtor's prior bankruptcy on the nondischargeability periods noted have overwhelmingly agreed with the IRS position.[3] The analysis of these courts, which I adopt, is based on 11 U.S.C. § 108(c) and 26 U.S.C. §§ 6501, 6502, 6503(b), (h).[4] Although the IRS is prevented from assessing or collecting federal taxes during a bankruptcy case, 11 U.S.C. § 362(a)(6), § 108(c) extends a statute of limitations for creditors in actions against the debtor when the creditor is prevented from proceeding outside the bankruptcy court due

to the automatic stay of the Bankruptcy Code. *Molina, supra* n. 3, at 794.[5] The Internal Revenue Code ("IRC"), title 26 United States Code, provides for such a statute of limitations for assessment of taxes (3 years), 26 U.S.C. § 6501(a), and for the collection of taxes after assessment (10 years). 26 U.S.C. § 6502(a).[6] In addition to § 108(c), the Internal Revenue Code also provides for its own suspension of these periods for collection and assessment during a bankruptcy case. IRC §§ 6503(b), (h).[7] Accordingly, courts have uniformly interpreted § 108(c) to activate IRC § 6503 and to prevent the periods for nondischargeability from running during the course of a debtor's bankruptcy case and for six months thereafter. *See e.g., supra* n. 3, *Brickley,* at 115; *Molina,* at 795; *Stoll,* at 785–86.

**3.** , *See In re West,* 137 B.R. 1012 (D.Or.1992) *aff'd* 5 F.3d 423 (9th Cir.1993) (240 day assessment period of § 507(a)(7)(A)(ii)); *In re Richards,* 141 B.R. 751 (W.D.Okl.1992) *aff'd* 994 F.2d 763 (10th Cir.1993) (same); *In re Linder,* 139 B.R. 950 (D.Colo.1992) (same); *In re Grogan,* 158 B.R. 197 (Bankr.E.D.Cal.1993) (240 day assessment period and three year period of § 507(a)(7)(A)(i)); *In re Montoya,* 965 F.2d 554 (7th Cir.1992) (three year period of § 507(a)(7)(A)(i)); *In re Bowling,* 147 B.R. 383 (Bankr.E.D. Va.1992) (same); *In re Ross,* 130 B.R. 312 (Bankr.D.Neb.1991) (same); *In re Ringdahl,* Bankr.L.Rep. ¶74,082, 1991 WL 284105 (Bankr.M.D.Fla.1991) (same); *In re Wise,* 127 B.R. 20 (Bankr.E.D.Ark.1991) (same); *In re Bryant,* 120 B.R. 983 (Bankr.E.D.Ark.1990) (same); *In re Davidson,* 120 B.R. 777 (Bankr. D.N.J.1990) (same); *In re Florence,* 115 B.R. 109 (Bankr.S.D.Ohio 1990) (same); *In re Ryan,* 1989 WL 155684 (Bankr.D.Colo.1989) (same); *In re Quinlan,* 107 B.R. 300 (Bankr.D.Colo.1989) (same); *In re Molina,* 99 B.R. 792 (S.D.Ohio 1988) (same); *In re Brickley,* 70 B.R. 113 (9th Cir. BAP 1986) (same); *In re Stoll,* 132 B.R. 782 (Bankr.N.D.Ga.1990) (three year period of § 507(a)(7)(A)(i), two year period of § 523(a)(1)(B)(ii) and three year period of § 523(a)(7)(B)).

**4.** Section 6503(i) was redesignated as § 6503(h) as a result of 1990 amendments to the Internal Revenue Code. References are to the current designation.

**5.** 11 U.S.C. § 108(c) provides:

(c) Except as provided in section 524 of this title [11], if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against

an individual with respect to which such individual is protected under section 1201 or 1301 of this title [11], and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after the notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title [11], as the case may be, with respect to such claim.

**6.** The 1990 amendments increased the collection period from six years to ten years effective for taxes assessed after the enactment, and for taxes assessed on or before the enactment if the six year period then existing had not yet expired.

**7.** IRC § 6503 provides in pertinent part:

(b) **Assets of taxpayer in control or custody of court.** The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of the District of Columbia and for six months thereafter.

(h) **Cases under title 11 of the United States Code.** The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—

(1) for assessment, 60 days thereafter, and

(2) for collection, 6 months thereafter.

Pertinent to these courts' analyses is legislative history to § 108(c) which provides:

> In the case of Federal tax liabilities, the Internal Revenue Code suspends a statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for six months thereafter (sec. 6503(b) of the Code). The Amendment applies this rule in a title 11 proceeding. Accordingly, the statute of limitations on collection of nondischargeable Federal tax liability of a debtor will resume running after 6 months following the end of the period during which the debtor's assets are in control or custody of a bankruptcy court. This rule will provide the Internal Revenue Service adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.

S.Rep. No. 989, 95th Cong., 2d Sess. 30–31 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5816, 5817 as cited in *Brickley, supra* n. 3, at 115.

These statutes and accompanying legislative history clearly indicate that Congress did not intend to allow a taxpayer to escape liability by protecting his assets in a bankruptcy proceeding until the statute of limitations expired. *Molina, supra* n. 3, at 795.

> To follow the Debtor's argument would render the extension of the statute of limitations in Section 108(c) without meaning, since tax collectibility is obviously useless if the tax debt has been discharged. In addition, such a result would open the door to schemes of tax avoidance by debtors who could simply dismiss and refile their case after the expiration of the three year period of nondischargeability. Since enforcement of tax laws against delinquent tax debtors takes time, Congress, through section 523, intended to give the taxing authority at least three full years to pursue such debtors ... Congress did not intend to allow tax avoidance through bankruptcy by permitting the discharge of the debtor before the taxing authority has had a fair opportunity to collect taxes due.

*Brickley, supra* n. 3, at 115–116 (citations omitted).

Debtor's reference to the highly criticized case of *In re Deitz*, 106 B.R. 236 (Bankr. D.Colo.1989) *rev'd* 116 B.R. 792 (D.Colo.1990) does not mandate a different result.[8] The court in *Deitz* held that the three year period in § 507(a)(7)(A)(i) is not a statute of limitations or collections period, but merely a period for measuring tax years for which priority will be given in a bankruptcy case. 106 B.R. at 239. Additionally, the *Deitz* court noted that while § 108(c) can extend nonbankruptcy law limitations periods, such as the Internal Revenue Code assessment and collection periods, it is not applicable to bankruptcy law limitations such as those in § 507(a)(7)(A). *Id.* The *Deitz* decision ignores congressional policy in enacting § 108(c) and shortsightedly assumes that the three year period of § 507(a)(7)(A)(i) has no other purpose than to measure a time period for which a priority will be given.

> Section 108(c) was passed in order to allow the IRS sufficient time to collect delinquent taxes following a Title 11 proceeding ... If Congress saw the need to suspend the IRS *six-year* [now ten year] statute of limitations during a Title 11 proceeding in order to give them adequate time to collect taxes, then Congress certainly did not intend to allow the *three-year* period for determining priority claims to run during that same time ... To argue that the statute of limitations should be tolled while the time limit for determining claims priority should run is both logically inconsistent and contradicts congressional policy ...

*Grogan, supra* n. 3, at 202. While §§ 507(a)(7)(A)(i)–(iii) or § 523(a)(1)(B)(ii) are not statute of limitations per se, they have the same practical effect. *Id.* If § 108(c) were not deemed to suspend the running of these provisions, then debtors would be given free rein to use bankruptcy filings to escape their tax liabilities without the IRS ever having a chance to collect on those liabilities. *Stoll, supra* n. 3, at 785.

8. Although *Deitz* was reversed, debtor contends that its reasoning remains valid because the record on appeal did not contain, and the district court did not consider, a written opinion of the Bankruptcy Judge's reasons for the decision or a brief by the debtor.

*See also, Linder, supra* n. 3, at 952–53 (criticizing *Deitz* ). I find that the periods for determining nondischargeability of debts as provided for in §§ 507(a)(7)(A)(i)–(iii) and § 523(a)(1)(B)(ii) are suspended from running during the period of a debtor's bankruptcy case and for six months thereafter.

I now turn to a determination as to the dischargeability of debtor's liability for tax for each of the years in question. A separate analysis will be undertaken for penalties and interest. The IRS filed an amended proof of claim in debtor's second chapter 11 case listing a secured claim for $785,544.96, an unsecured priority claim of $848,618.23, and an unsecured general claim for penalties on debtor's unsecured priority claim of $199,-630.20 totalling $1,833,793.39 for debtor's liability for taxes, interest, and penalties for the years 1979–1987.[9] This proof of claim along with exhibits and testimony establish the following information relevant to a dischargeability analysis.

### Secured Claims

| Year | Date Return Due, Including Extensions | Date Return Filed | Date Assessed |
|---|---|---|---|
| 1981 | 6–15–82 | 5–10–85 | 8–26–85 |
| 1983 | 10–15–84 | 8–16–85 | 1–06–86 |
| 1984 | 8–15–85 | 8–16–85 (timely) | 9–30–85 |
| 1985 | 10–15–86 | 10–16–86 (timely) | 11–17–86 |

### Unsecured Priority Claims

| Year | Date Return Due, Including Extensions | Date Return Filed | Date Assessed |
|---|---|---|---|
| 1979 | 10–15–80 | 10–16–80 (timely) | 10–17–83 |
| 1980 | 10–15–81 | 1–13–87 | 2–16–87 |
| 1980 | 10–15–81 | 1–13–87 | prohibited |
| 1981 | 8–15–82 | 5–10–85 | prohibited |
| 1982 | 8–15–83 | 4–15–84 | prohibited |
| 1983 | 10–15–84 | 8–16–85 | prohibited |
| 1984 | 8–15–85 | 8–16–85 (timely) | prohibited |
| 1985 | 10–15–86 | 10–16–86 (timely)[10] | prohibited |
| 1986 | 8–15–87 | 12–12–89 | prohibited |

---

Pursuant to my previous analysis, as the nondischargeability periods of § 523(a)(1) are suspended during debtor's prior bankruptcies and for six months thereafter, and as debtor has been in a bankruptcy case since the first chapter 11 filing, excluding 107 days, I find the relevant date for determining nondischargeability is that of debtor's first filing, March 31, 1987.

For any of debtor's tax liabilities to be found nondischargeable by virtue of § 523(a)(1)(A) and § 507(a)(7)(A)(i), debtor's tax return for that year must have been last due within three years of the bankruptcy

---

9. The IRS asserts both a secured and unsecured claim for tax liabilities for years 1981, 1983, 1984, and 1985. Additionally, the IRS asserts two unsecured claims for 1980, one assessed ($12,797.00 tax due) and the other prohibited from assessment ($32,659.00 tax due). Some of the claims asserted fall within more than one of the § 523 exceptions to discharge. For the pur-

pose of a complete analysis, the entire set of claims will be considered under each exception.

10. Although the claims for 1979, 1984, and 1985 were filed one day after the due date, the IRS noted these returns as timely filed in their proposed findings of fact, and this court will so treat them.

filing—by March 31, 1984 or subsequent thereto. Debtor's liability for tax pursuant to the IRS secured claims for tax years 1983, 1984, and 1985 and pursuant to the IRS unsecured priority claims for tax years 1982, 1983, 1984, 1985 and 1986 all meet that condition.

For any of the tax debts to be found nondischargeable pursuant to § 523(a)(1)(A) and § 507(a)(7)(A)(ii), the tax must have been assessed by August 5, 1986, within 240 days of debtor's filing on March 31, 1987, or thereafter. Debtor's liability for tax on the IRS secured claim for 1985 and debtor's 1980 tax liability for $12,797.00 are made nondischargeable by these provisions.

A third ground for nondischargeability is § 523(a)(1)(B)(ii). Under this section, the return must have been filed late and by March 31, 1985, within 2 years of debtor's initial petition, or thereafter. Debtor's tax liability for 1981 and 1983—both the IRS secured and unsecured claims, both 1980 unsecured tax claims, and debtor's 1986 tax liability all meet this test.

The fourth ground for nondischargeability as to debtor's remaining tax liability for 1979 and 1982 is § 523(a)(1)(A) and § 507(a)(7)(A)(iii). The 1979 liability does not fall within these provisions as it was previously assessed by the IRS. The 1982 liability, while not assessed, still remains assessable after debtor's bankruptcy.[11] However, debtor also filed his 1982 tax return late and more than two years prior to debtor's initial bankruptcy. Accordingly, the 1982 tax debt would be a tax of a kind specified in § 523(a)(1)(B)(ii) specifically excluded from the priority provision of § 507(a)(7)(A)(iii) and is, therefore, not made nondischargeable by that provision and § 523(a)(1)(A). *In re Doss,* 42 B.R. 749 (Bankr.E.D.Ark.1984).

The IRS also asserts that debtor's tax liabilities for the years at issue in this adversary are made nondischargeable because debtor has willfully attempted to avoid payment of his federal taxes. 11 U.S.C. § 523(a)(1)(C).[12] The following information is relevant.

Debtor is a fifty-nine year old physician specializing in the area of vascular radiology and has practiced in the Augusta area since 1968. Until 1993 debtor was the only physician offering such services. Debtor is currently employed by the Medical College of Georgia and is a 50% partner in Vascular Radiology Associates. Until debtor's chapter 7 case, his partnership income was paid to a professional corporation, C. Rex Teeslink, M.D., P.C. At this time, debtor's professional corporation is dissolved.[13]

Debtor's wife handled all his taxes prior to 1980 when she was hospitalized for mental problems. Debtor then separated from his wife and took custody of a minor child. Debtor obtained a divorce in December 1981.

On June 17, 1986 debtor plead guilty to failure to file an income tax return for 1980 pursuant to 26 U.S.C. § 7203. Debtor paid a fine of $10,000.00, served a probation period of four years, and performed 100 hours of community service. As part of the sentencing debtor was required to, and has continued to, have an accountant prepare his taxes.

John L. Thompson, an attorney specializing in tax matters was engaged by debtor in 1987. According to Mr. Thompson, the IRS was not happy with the light sentence debtor received for the 1980 conviction. On Mr. Thompson's advice, debtor filed a petition in Chapter 11 on March 31, 1987. During this chapter 11 proceeding, in September 1990, debtor proposed an offer in compromise with the IRS that would have paid the IRS $800,-000.00 over a period of ten years. Under the

---

11. Internal Revenue Code § 6501(a) provides a three year period for assessment after a return is filed. Debtor's 1982 return was filed on April 15, 1984, giving the IRS until April 15, 1987 to assess the tax. As debtor filed bankruptcy prior to expiration of that period the three-year assessment period was suspended, giving the IRS approximately seven months after the conclusion of debtor's chapter 7 case to assess debtor's 1982 tax.

12. The IRS does not contend that debtor has filed a fraudulent return. *See* 11 U.S.C. § 523(a)(1)(C) *supra.*

13. The exact dates on which debtor formed the professional corporation or entered into the medical partnership were not established at trial.

terms of the settlement, debtor was to pay the IRS $100,000.00 in advance, $36,000.00 per year for 10 years, and a certain percentage of income over $175,000.00. In 1987 debtor's income was approximately $280,000.00 and he had expenses of $120,000.00. At the time of the offer, debtor's tax liability was approximately $2,000,000.00. Debtor's offer was refused and he voluntarily dismissed the chapter 11 case on October 15, 1990.

Debtor made another offer in compromise during his second chapter 11 proceeding, to pay the IRS $400,000.00 in cash, to be borrowed from friends, in order to settle his tax liabilities. This offer was also refused by the IRS. On August 27, 1992, the debtor's chapter 11 proceeding was converted to the present chapter 7 case.

In 1993, the IRS levied upon and obtained approximately $6,285.00 from debtor's checking account. Approximately $60,000.00 was obtained from foreclosure of debtor's residence in which he had lived since 1972.

On August 10, 1993 a Notice of Levy of Wages was filed with the Medical College of Georgia. The Levy pertained to tax years 1980 to 1987 and year 1990. Prior to said Notice of Levy, in June 1992 debtor had instructed the Medical College of Georgia to pay all of his wages earned therein to the IRS for current federal withholding taxes. This amount was to cover both debtor's income from the Medical College of Georgia, approximately $85,000.00 annually, and his partnership income, approximately $150,000.00 to $175,000 annually, from which no withholding was being taken.

Debtor is currently paid his partnership salary, less 40%, at irregular intervals, perhaps 9 times a year. Debtor cashes the salary check instead of depositing the check in a bank account. Debtor's personal expenses are approximately $120,000.00 per year. Debtor has only $1.30 in his checking account and has no savings account. Debtor's only vehicle is a 1992 Voyager Mini–Van.

Debtor testified at trial that he lives a normal lifestyle for a person of his status, training, and reputation in the community and that his lifestyle has not changed in twenty years. As an authority in his field, debtor teaches at various seminars across the country and worldwide, including trips to Germany in 1993, Scandinavia in 1992, and France and San Juan, Puerto Rico in 1991. During the last four years, debtor has become involved in competing in various triathalon competitions, averaging three to four competitions a year. Debtor sometimes combined a triathalon competition with seminar business. Debtor has competed in Florida, New England, the Midwest and Switzerland. Amendments to debtor's professional corporation tax returns for years 1989 and 1990 show that debtor reclassified a portion of his salary, $100,000 in 1989 and $90,000.00 in 1990, as travel expenses and attorney fees.

During the years 1979 to 1986, debtor failed to file timely returns in five of those eight years. After debtor's 1986 guilty plea to criminal failure to file his 1980 return and after filing for bankruptcy, debtor failed to file any of his 1987 to 1991 returns timely. Except for years 1987 and 1990, during this period debtor did pay all his taxes or was due a refund.[14] In 1987, as evidenced by his return, debtor owed the IRS $4,151.00. No payment was made with his return. The IRS subsequently changed his return to indicate $6,925.00 as debtor's liability, including penalties and interest. In 1990, debtor paid all the taxes due as listed on his filed return. However, the IRS disallowed a FICA credit and claims debtor owes $3,924.00. Debtor was not noticed of the 1987 and 1990 adjustments to his return. Debtor has not yet filed a 1992 return due to an IRS subpoena of his records.

Debtor's total tax liability in the amount of $1,833,793.39 represents liability for tax in the amount of $597,004.63, penalties in the amount of $309,435.03 and interest in the amount of $927,353.73.

14. The following chart illustrates debtor's tax history from 1987 to 1991.

| Year | Return Filed | Payment |
|------|------|---------|
| 1987 | 11–17–88 | $6,925.00 owing |
| 1988 | 9–27–91 | refund of $37.00 due |
| 1989 | 9–12–91 | refund of $309.00 due |
| 1990 | 12–2–91 | $3,924.00 owing |
| 1991 | 8–18–92 | refund of $1,291.00 due |

The IRS contends that debtor has willfully attempted to evade his taxes by (1) filing serial bankruptcies for the same tax liabilities, (2) maintaining a lifestyle requiring expenditures of $120,000.00 annually and travelling abroad without making any meaningful payments on his tax liabilities, (3) dealing in cash and paying his entire Medical College income to current withholding to avoid IRS levies, and (4) continuing to file late income tax returns while in bankruptcy.

■ Proof of a willful attempt to evade a tax under § 523(a)(1)(C) requires a showing of a debtor's specific intent to evade a tax believed to be owing. *In re Gilder,* 122 B.R. 593 (Bankr.M.D.Fla.1990) and *In re Carapella,* 105 B.R. 86 (Bankr.M.D.Fla.1989) *aff'd* 115 B.R. 365 (M.D.Fla.1990) *aff'd* 925 F.2d 1474 (11th Cir.1991) (adopting the standard for finding civil tax fraud under 26 U.S.C. § 6653(b)). Whether debtor intended to evade his tax obligations is a question of fact to be determined from the totality of the record. *In re Berzon,* 145 B.R. 247, 250 (Bankr.N.D.Ill.1992). As direct proof of such intent is usually unavailable, such intent must be proved by circumstantial evidence. *Id.* Fact patterns evidencing badges of fraud include "significant understatements of income made repeatedly; failure to file tax returns; repeatedly filing returns late; implausible or inconsistent behavior by the taxpayer, and failure to cooperate with federal tax authorities." *Id.* (finding willfulness where filed returns two to five years late, understated income by more than 50% for two tax years). *See also In re Gilder, supra* (filing false withholding statements and failure to file tax returns until visited by IRS agent); *In re Carapella, supra* (substantial understatement of income by $275,000.00, failure to keep accurate records, mail fraud conviction, use of shell corporations to conceal income). Concealment of assets, dealing in cash, shielding income and otherwise frustrating IRS collection efforts are also indications of willful attempts to evade a tax. *In re Lewis,* 151 B.R. 140, 146 (Bankr. W.D.Tenn.1992).

■ In this case, debtor has consistently failed to timely file his tax returns and plead guilty to criminal failure to file his 1980 tax return. During the years 1979 to 1987 debtor failed to pay all the tax due as listed on his returns. The only payments made on debtor's almost two million dollar outstanding tax liability were involuntary—resulting from an IRS levy on his checking account, his wages and his residence. *See In re Fernandez,* 112 B.R. 888, 892 (Bankr.N.D.Ohio 1990) (failure to make voluntary payments, failure to file); *Lewis, supra,* at 144 (failure to pay all of tax obligations when due, all taxes not paid with returns, only involuntary payments made). Debtor's reliance upon his wife, lawyers or accountants to prepare his taxes does not absolve him from responsibility for failure to timely comply with his tax obligations. *Lewis, supra,* at 144. While debtor did make two offers in compromise to the IRS, debtor otherwise failed in any manner to attempt to reduce his tax debt during a time when he incurred over $120,000.00 per year in personal expenditures and made approximately $240,000.00 per year. More significantly, debtor's actions in having his entire salary at the Medical College of Georgia go to withholding and having no withholding taken from his partnership income while taking all his partnership income in cash indicates a scheme to conceal an income of $175,000.00 from the IRS and protect it from application to his tax debt. Debtor's testimony to the opposite notwithstanding, I find that the totality of the record establishes by a preponderance of the evidence that debtor willfully attempted to evade his tax obligations. Based on the foregoing, I find that all of debtor's liability for tax for years 1979–1986 is nondischargeable.

Debtor also contends that all penalties and interest should be dischargeable in his chapter 7 case. The dischargeability of tax penalties is governed by 11 U.S.C. § 523(a)(7) which provides in pertinent part that a § 727 discharge will not discharge an individual debtor of any debt—

to the extent such debt is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection [§ 523(a)(1) ]; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition[.]

The Eleventh Circuit Court of Appeals has interpreted this provision "to create two independent measures for the dischargeability of tax penalties." *In re Burns,* 887 F.2d 1541, 1545 (11th Cir.1989). Thus, "a tax penalty is discharged if the tax to which it relates is discharged . . ., or if the transaction or event giving rise to the penalty occurred more than three years prior to the filing of the bankruptcy petition." *Id.* at 1544. In this case, none of debtor's liability for the underlying taxes is dischargeable. Therefore, my inquiry is limited to whether the transaction or event giving rise to the penalty occurred more than three years before the bankruptcy filing. The applicable "transaction or event" triggering this provision in the case of failure to file penalties is the date the returns were last due. *Stoll, supra* n. 3, at 787 (noting that such penalties could be imposed on the first day the returns were late.) In this case, the only penalties reflected in the proof of claim at issue in this proceeding are failure to file penalties and failure to pay penalties. Def.'s Answer to Pl.'s Interrogs. As a penalty can be imposed for failure to pay a tax on the date a return is due, *see* 26 U.S.C. § 6651(a)(2), 6151(a), the same triggering date should apply for failure to pay and failure to file penalties. However, the three year limitation period of § 523(a)(7)(B) is also suspended during a debtor's prior bankruptcy. *Stoll, supra* n. 3, at 786. Accordingly, in this case only those penalties relating to a tax for which the return's due date was prior to March 31, 1984 are dischargeable. A review of the proof of claim filed by the IRS reveals that penalties relating to years 1979, 1980, 1981, and 1982 are all dischargeable. However, the proof of claim lists only the penalty attributable to the 1981 year secured claim ($63,730.49). The penalties attributable to unsecured priority claims for the years in question are not individually delineated; the proof of claim only lists the total of all penal-

ties on unsecured priority claims as $199,-630.20. Accordingly, specific dollar amounts attributable to these dischargeable penalties shall be subsequently determined pursuant to directions from this court.

As to the dischargeability of the interest portion of debtor's tax liabilities for the years at issue, it is well established that both pre-petition interest (accruing prebankruptcy) and post-petition interest (accruing after a prior bankruptcy) are nondischargeable where the underlying tax liability is nondischargeable. *In re Larson,* 862 F.2d 112, 119 (7th Cir.1988) (pre-petition interest); *Burns, supra,* at 1543 (post-petition interest). Nevertheless, debtor cites the case of *In re Compass Marine Corp.,* 146 B.R. 138 (Bankr. E.D.Pa.1992) for the proposition that interest is only allowed to accrue during a bankruptcy case if the creditor is oversecured, apparently contending that in this case the IRS has impermissibly calculated interest on its claim during the time debtor was in his first bankruptcy. This argument is more appropriately considered on an objection to the IRS claim rather than in a dischargeability proceeding. However, debtor's argument does not require striking any interest portion of the IRS claim. Where a prior bankruptcy case has been dismissed, the IRS is entitled to go back, calculate, and assert penalty and interest claims for the period of the prior bankruptcy. *See e.g., In re Whitmore,* 154 B.R. 314 (Bankr.D.Nev.1993). Thus, any IRS' assertion of interest on debtor's tax liability for the period during debtor's first chapter 11 proceeding is allowable and would be treated according to the general rule expressed in *Larson* and *Burns.* In this case, since all of debtor's underlying tax liability is nondischargeable, it would appear that the entire interest portion of the IRS claim is nondischargeable. However, debtor also contends that the interest attributable to penalties should be "struck." The interest portion of the IRS claim as calculated on debtor's total tax balance, including any penalties assessed against the debtor, is $927,-353.73. However, the interest component attributable to penalties totals $143,457.36. The issue raised by debtor's contention and case law noted *supra* is whether interest

attributable to dischargeable penalties under § 523(a)(7)(B) should also be dischargeable even though the underlying tax liability is itself nondischargeable. Although this court is not aware of any reported decisions addressing this precise issue, at least one court has discharged interest on penalties in this situation without discussion. *See In re Frary,* 117 B.R. 541, 549 (Bankr.D.Alaska 1990). I find that it would be incongruous to make interest on penalties nondischargeable when the penalty giving rise to the interest is dischargeable, even though the underlying tax is nondischargeable. This view would appear to be supported by the disjunctive nature of § 523(a)(7) as well. If Congress chose to allow certain penalties to be dischargeable even though the underlying tax remains nondischargeable, no offense should be taken to a discharge of interest on those penalties. I find that as to the years in which debtor's tax penalties are discharged, the interest attributable to such penalties is also discharged.

### Adversary 93–01077A

In this adversary debtor sought to have a temporary restraining order and a permanent injunction issued against the IRS to prevent it from collecting indebtedness under the Notice of Levy on Wages filed with the Medical College of Georgia for years other than 1987 and 1990. I previously denied debtor's application for temporary restraining order based on debtor's outstanding liability for taxes not at issue in adversary 92–01077A.

Debtor's complaint was prompted by concerns that the IRS would collect monies from debtor and then apply the funds to tax liabilities for years 1979–1986 which were at issue in the related dischargeability proceeding and which might be determined dischargeable. Debtor's concern may have been legitimate. At trial debtor introduced evidence that the IRS had applied the monies from foreclosure on debtor's residence, approximately $60,000.00, to debtor's tax liability for year 1979 in the amount of $53,470.97 and to debtor's tax liability for year 1980 in the amount of $6,529.03. Additional monies in the amounts of $2,614.50, $2,614.50 (source

not disclosed), and $6,285.21 (levy on checking account) totalling $11,514.21 were also applied to debtor's 1980 tax debt subsequent to debtor's discharge in this case. Although the penalties and interest on penalties for year 1980 were deemed discharged by adversary 92–01077A, a review of the IRS proof of claim reveals that debtor's nondischargeable tax liability for that year exceeds the amount applied to the 1980 debt. Therefore, no reallocation of monies is required for the 1980 year.

Whether reallocation of the IRS application of payments to debtor's tax liabilities for 1979 is needed is unclear. Under adversary 92–01077A in this order, I determined that debtor's 1979 tax liability and interest on that liability was not discharged, but that the penalties and interest on penalties for 1979 were discharged. The IRS proof of claim lists the tax liability for that year as $8,013.00 and the interest to petition date as $34,261.44 for a total of $42,274.44. This amount is less than the $53,470.97 applied to that tax year debt. While the accrual of interest subsequent to debtor's chapter 7 case may account for the difference, some of that difference may be due to penalties associated with tax year 1979 which were discharged. The exact amount of penalties associated with this tax year or the amount of interest associated with any such penalties cannot be determined from the IRS proof of claim. To the extent that the IRS application would result in payment of discharged liabilities for that year, the application must be reallocated.

Although debtor has received a discharge of a portion of his debts to the IRS, a substantial amount of liability remains and a permanent injunction against the IRS is not warranted. In the companion adversary in this order I have determined that the debt due the IRS for debtor's income taxes for the years 1979 through 1987 and interest due on the taxes as well as penalties charged for tax years 1983 forward and interest on the penalties are not discharged in the debtor's Chapter 7 case. This determination negates the basis sought by the plaintiff for the injunction to prevent collection efforts by the IRS for a discharged debt. The discharge injunc-

tion of § 524 effectively operates to protect a debtor who has received a discharge from creditor actions to collect discharged debts. Specifically, § 524(a)(2) provides that a title 11 discharge—

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such [discharged] debt as a personal liability of the debtor, whether or not .discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2). Although I have ruled that the IRS has not waived its sovereign immunity with regard to actions brought against it in tort for violation of a § 524 discharge injunction, *see In re Hardy,* 161 B.R. 320 (Bankr.S.D.Ga.1993), I cannot assume that the IRS will violate the rule of law as expressed in § 524.

Accordingly, based on the foregoing analysis, it is hereby ORDERED that debtor's liability for taxes for years 1979–1986 and 1987 as admitted by the debtor, is not discharged; and further

ORDERED that debtor's liability for penalties for years 1979, 1980, 1981 and 1982 and interest attributable to such penalties is discharged, and that debtor's liability for all other penalties and interest is not discharged.[15]

It is further ORDERED that debtor's complaint for issuance of a permanent injunction against the IRS is denied.

Having found that a portion of the IRS claim in this case is discharged but that as filed the claim does not permit a determination of the amount of debt discharged, the IRS is ORDERED to file with this court and serve upon plaintiff's attorney within thirty (30) days of the date of this order a breakdown by tax year for years 1979 through 1987, the tax due, interest on the tax due calculated through a stated date, penalties charged and the interest calculated on the penalties through a stated date and all payments received subsequent to the debtor's filing of this bankruptcy case and how ap-

plied. The plaintiff may file objection to the calculation within thirty (30) days of filing and service. In the event a timely objection is filed the clerk will set a hearing. Upon determination of the amounts at issue an appropriate judgment will be entered.

---

**15.** That debtor's liabilities for penalties and interest for year 1981 are discharged has no effect on the IRS ability to satisfy its secured claim for 1981, including any penalties and interest attributable to that claim on its tax lien filed for that year from the property to which the lien attached.